1  JEDEDIAH WAKEFIELD (CSB No. 178058)
   jwakefield@fenwick.com
2  ETHAN M. THOMAS (CSB No. 338062)
   ethomas@fenwick.com
3  SAMUEL SAHAGIAN (CSB No. 341587)
   ssahagian@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone:    415.875.2300
6  Facsimile:    415.281.1350

7  ADAM GAHTAN (admitted *pro hac vice*)
   agahtan@fenwick.com
8  902 Broadway, 18th Floor
   New York, NY 10010
9  Telephone:    212.430.2600
   Facsimile:    650.938.5200

10
11 Attorneys for Defendants
   NORDSEC LTD, NORDSEC B.V., NORDVPN
12 S.A., NORD SECURITY INC., and TEFINCOM
   S.A. d/b/a NordVPN

13

14                UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17

18 JORDAN ZEICHNER,                        Case No.:  3:24-cv-02462-JSC

19 On Behalf of Himself and All Others Similarly   **DEFENDANTS' NOTICE OF MOTION**
   Situated,                                **AND MOTION TO DISMISS OR STAY**
20                                          **PLAINTIFF'S AMENDED**
         v.                                 **COMPLAINT UNDER THE "FIRST-**
21                                          **TO-FILE" RULE, OR IN THE**
   NORDSEC LTD, NORDSEC B.V., NORDVPN       **ALTERNATIVE TO DISMISS UNDER**
22 S.A., NORD SECURITY INC., and TEFINCOM   **FED. R. CIV. P. 12(B)(6); AND**
   S.A. d/b/a NordVPN                       **MOTION TO DISMISS UNDER FED.**
23                                          **R. CIV. P. 12(B)(2)**
         Defendants.
24                                          Date:      October 10, 2024
                                            Time:      10:00 A.M.
25                                          Judge:     Jacqueline Scott Corley

26

27

28

   DEFENDANTS' MOTION TO DISMISS
   AMENDED COMPLAINT                                    Case No.: 3:24-cv-02462-JSC

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.    INTRODUCTION ........................................................................................ 2

II.   STATEMENT OF ISSUES TO BE DECIDED ......................................... 3

III.  STATEMENT OF FACTS .......................................................................... 3

    A.    Plaintiff Subscribes To NordVPN And Related Services. ..................... 3

    B.    Plaintiff Allows His Subscription To Renew Three Times. .................. 4

    C.    Defendants ..................................................................................................... 5

    D.    The Earlier-Filed North Carolina Suit Is Nearly Identical To This One ................ 6

IV.   ARGUMENT ................................................................................................ 7

    A.    The Court Should Dismiss Or Stay This Case In Its Entirety Under The
"First-To-File" Rule. .................................................................................... 7

    B.    The Court Should Dismiss Counts IV-VII For Failure To State Claims. ............. 11

        1.    The CLRA Claims (Count IV) Should Be Dismissed Because
Plaintiff Has Not Alleged An Actionable Misrepresentation Or
Omission. ............................................................................................. 11

        2.    The Economic Loss Rule Bars Plaintiff's Common Law Claims
(Counts V-VII). .................................................................................. 13

        3.    Independent Of The Economic Loss Rule, Plaintiff Fails To State
Claims For Restitution Or Money Had And Received. ................ 14

            a.    Restitution (Count VI) .............................................................. 14

            b.    Money Had And Received (Count VII) .................................. 16

    C.    The Court Should Dismiss All Claims Against The Non-Contracting
Defendants For Lack Of Personal Jurisdiction. ..................................... 17

        1.    There Is No General Jurisdiction Over Any Defendant. .............. 18

        2.    There Is No Specific Jurisdiction Over The Non-Contracting
Defendants. ........................................................................................ 18

            a.    Plaintiff Has Alleged No Facts Establishing Purposeful
Availment Or Direction By The Non-Contracting
Defendants. ............................................................................... 19

b. Plaintiff's Claims Do Not Arise From Or Relate To The Non-Contracting Defendants' Contacts With California, If Any. ............................................................................... 20

c. The Exercise Of Jurisdiction Over The Non-Contracting Defendants Would Be Unreasonable. ............................................. 21

3. Defendants Are Not Alter Egos Of Each Other. ...................................... 22

V. CONCLUSION ................................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
 802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................ 15, 16

*Apple Inc. v. Allan & Assocs. Ltd.*,
 445 F. Supp. 3d 42 (N.D. Cal. 2020) ......................................................... 22, 23, 24

*Artec Grp., Inc. v. Klimov*,
 No. 15-cv-03449-RMW, 2015 WL 9304063 (N.D. Cal Dec. 15, 2015) ................ 23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 11

*Avidor v. Sutter's Place, Inc.*,
 212 Cal. App. 4th 1439 (2013) ............................................................................... 16

*Ballard v. Savage*,
 65 F.3d 1495 (9th Cir. 1995) ................................................................................. 20

*In re Bozic*,
 888 F.3d 1048 (9th Cir. 2018) .................................................................................. 8

*Brodsky v. Apple Inc.*,
 445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................... 14

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ............................................................................................... 19

*Church of Scientology of California v. U.S. Dept. of Army*,
 611 F.2d 738 (9th Cir. 1979) .................................................................................... 7

*CMAX, Inc. v. Hall*,
 300 F.2d 265 (9th Cir. 1962) .................................................................................. 10

*Corcoran v. CVS Health Corp.*,
 169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................... 24

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ......................................................................................... 18, 22

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001) .................................................................................. 17

*Dole Food Co. v. Watts*,
 303 F.3d 1104 (9th Cir. 2002) ................................................................................ 19

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Farmer v. BarkBox, Inc.*,
    No. 5:22-cv-1574-SSS-SHKX, 2023 WL 8522984 (C.D. Cal. Oct. 6, 2023) ...................... 13

*Fireman's Fund Ins. v. Nat'l Bank of Coops.*,
    103 F.3d 888 (9th Cir. 1996).................................................................................. 17

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ................................................................................................ 20

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................................... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................................. 18

*Gutierrez v. Girardi*,
    194 Cal. App. 4th 925 (2011)..................................................................................... 16

*Hall v. Club Corp. of Am.*,
    33 F. App'x 873 (9th Cir. 2002) ................................................................................ 23

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ................................................................................................ 19

*Hill v. Robert's Am. Gourmet Food, LLC*,
    No. 13-cv-00696-YGR, 2013 WL 3476801 (N.D. Cal. July 10, 2013)....................... 8

*Hilton v. Apple Inc.*,
    No. C-13-2167 EMC, 2013 WL 5487317 (N.D. Cal. Oct. 1, 2013)...................... 9, 24

*Hoyt v. Amazon.com, Inc.*,
    No. 19-cv-00218-JSC, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019)....................... 10

*Ickes v. AMC Networks Inc.*,
    No. 23-cv-00803-SI, 2023 WL 4297577 (N.D. Cal. June 30, 2023) .......................... 9

*Int'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945)................................................................................................ 18

*Johnson v. GMRI, Inc.*,
    No. CV F 070283LJODLB, 2007 WL 1490819 (E.D. Cal. May 21, 2007) ................ 17

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)................................................................................................ 19

*Klein v. Chevron USA, Inc.*,
    202 Cal. App. 4th 1342 (2012)........................................................................... 15, 16

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
    787 F.3d 1237 (9th Cir. 2015)........................................................................... 7, 8, 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987)......................................................................................... 18

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
    No. C-05-4194 SC, 2006 WL 563053 (N.D. Cal. Mar. 7, 2006)............................................ 16

*Lindner v. Occidental Coll.*,
    No. CV 20-8481-JFW(RAOx), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020)..................... 13

*Lopez v. YP Holdings, LLC*,
    No. 18-cv-8791-MWF-MAAx, 2019 WL 6354387 (C.D. Cal. July 9, 2019) ....................... 17

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................. 15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)........................................................................................... 18

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004)...................................................................................... 14, 15

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ........................................................................................... 14

*Microchip Tech., Inc. v. United Module Corp.*,
    No. CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) ................................. 7

*Munoz v. MacMillan*,
    195 Cal. App. 4th 648 (2011) ........................................................................................... 14

*NuCal Foods, Inc. v. Quality Egg LLC*,
    887 F. Supp. 2d 977 (E.D. Cal. 2012) ................................................................................ 22

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
    52 F.3d 267 (9th Cir. 1995)............................................................................................... 19

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985)........................................................................................... 21

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982).......................................................................................... 7, 10

*Pacific Mar. Freight, Inc., v. Foster*,
    No. 10-cv-0578-BTM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ................................ 25

*Panasonic Corp. of N. Am. v. Buy Cheap Software Inc.*,
    No. 2:17-cv-9171-AB, 2018 WL 6133716 (C.D. Cal. Aug. 31, 2018)................................. 17

*Payoda, Inc. v. Photon Infotech, Inc.*,
    No. 14-cv-04103-BLF, 2015 WL 4593911 (N.D. Cal. July 30, 2015) ................................. 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) .................................................................................... 17

*Pedro v. Millennium Prods., Inc.*,
  No. 15-cv-05253-MMC, 2016 WL 3029681 (N.D. Cal. May 27, 2016) ........................... 8, 9

*Playboy Enters., Inc. v. Welles*,
  279 F.3d 796 (9th Cir. 2002) ...................................................................................... 22

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) .......................................................................... 22, 23, 24

*Rattagan v. Uber Techs., Inc.*,
  19 F.4th 1188 (9th Cir. 2021) ...................................................................................... 13

*Reynolds v. Binance Holdings Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020) .......................................................................... 24

*Robbins v. PlushCare, Inc.*,
  No. 21-CV-03444-MMC, 2022 WL 2988344 (N.D. Cal. July 28, 2022) ....................... 12, 16

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) .............................................................................................. 13

*Robinson v. HSBC Bank USA*,
  732 F. Supp. 2d 976 (N.D. Cal. 2010) .......................................................................... 15

*Ruff v. Del Monte Corp.*,
  No. C 12-05251 JSW, 2013 WL 1435230 (N.D. Cal. Apr. 9, 2013) ................................. 8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014) ..................................................................................... 16

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) .................................................................... 23, 24

*Saroya v. Univ. of the Pac.*,
  503 F. Supp. 3d 986 (N.D. Cal. 2020) .......................................................................... 16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ...................................................................................... 11

*Schumann v. Amazon.com Inc.*,
  No. 3:20-cv-1751-JR, 2021 WL 5069178 (D. Or. July 19, 2021) ............................... 8, 10

*Schwartz v. Frito-Lay N. Am.*,
  No. C-12-02740 (EDL), 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) ............................. 9

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................... 17, 18, 19, 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (2000)..................................................................22, 23

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2000)....................................................................11

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998)..................................................................11

*Stewart v. Screen Gems-EMI Music, Inc.*,
   81 F. Supp. 3d 938 (N.D. Cal. 2015) (J. Corley) ...................22, 23, 24, 25

*Tsai v. Wang*,
   No. 17-cv-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017) ...............15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)..................................................................11

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ..................................................24

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ..........................................7, 9, 10

*Walter v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) ..................................................17

*Ward v. Follett Corp.*,
   158 F.R.D. 645 (N.D. Cal. 1994)..............................................................8

*Weiss v. Marcus*,
   51 Cal. App. 3d 590 (1975).......................................................................16

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017)..................................................................22

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023)......................................................18, 20, 21

*Young v. L'Oreal USA, Inc.*,
   526 F. Supp. 3d 700 (N.D. Cal. 2021) ..............................................7, 8, 9

*Zeller v. Optavia LLC*,
   No. 22-cv-434-DMS-MSB, 2024 WL 1207461 (S.D. Cal. Mar. 14, 2024) .............13

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
   525 F. Supp. 3d 1017 (N.D. Cal. 2021) ............................................13, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law

**Statutes**

28 U.S.C. § 1391 ................................................................................................................ 8

28 U.S.C § 1404(a) ........................................................................................................... 8

Cal. Civ. Code §§ 1750 et seq. .......................................................................................... 3

Cal. Civ. Code § 1770(a) ................................................................................................. 11

Cal. Code of Civ. Proc. § 410.10 .................................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 9(b) .............................................................................................. 2, 11, 15

Fed. R. Civ. P. 12(b)(2) .................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2, 3, 11

1

**NOTICE OF MOTION AND MOTION**

2          Please take notice that on October 10, 2024 at 10:00 A.M., or as soon thereafter as counsel

3   may be heard, in the courtroom of the Honorable Jacqueline Scott Corley, located at Courtroom 8

4   – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Nordvpn S.A.,

5   Tefincom S.A., NordSec Ltd, NordSec B.V., and Nord Security Inc. move to dismiss or stay this

6   case under the "first-to-file" rule.  Alternatively, Defendants move to dismiss Plaintiff's causes of

7   action under Count IV (California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.),

8   Count V (conversion), Count VI (restitution), and Count VII (money had and received), pursuant

9   to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Plaintiff fails to plead facts

10  sufficient to state a claim upon which relief may be granted with respect to those causes of action.

11  In addition, Defendants move to dismiss all claims against Defendants NordSec Ltd, NordSec B.V.,

12  and Nord Security Inc. under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

13  jurisdiction.

14          This Motion is based on this notice of motion; the memorandum of points and authorities;

15  the accompanying request for judicial notice, the declarations of Jedediah Wakefield, Olga

16  Sinkeviciene, Geraldas Kasulis, Ruta Gorelcionkiene, Alina Gatsaniuk, and Jurgita

17  Baltramiejuniene; the papers on file; any reply that Defendants file in support of this motion; and

18  any evidence and argument presented to the Court.

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Nordvpn S.A. ("Nord") offers consumer services that help protect user privacy online. Like many online service providers, Nord offers its services on a paid subscription basis, with the subscription continuing until the customer cancels. In his original putative class action complaint, Plaintiff Jordan Zeichner alleged that Nord and its affiliates violated certain disclosure requirements of California's auto-renewal law ("ARL") in connection with online subscription services that he purchased from them. On the same basis, he asserted claims under California's Unfair Competition law ("UCL"), the California Consumers Legal Remedies Act ("CLRA"), and various tort theories. Plaintiff's lawyers had previously filed a substantially similar suit in the Western District of North Carolina, against the same Defendants, on behalf of identical nationwide and state classes. Accordingly, Defendants moved to dismiss or stay this action under the "first-to-file" rule. Defendants also moved to dismiss certain claims under Rule 12(b)(6) for failure to state a claim, and all claims against certain defendants for lack of personal jurisdiction.

Attempting to avoid the consequences of the "first-to file" rule, Plaintiff has filed an amended Complaint in which he has made superficial changes to the claims and dropped all putative classes except for a single class of California customers. But Plaintiff's claims still arise from the same conduct alleged in the earlier North Carolina action—Nord's allegedly deceptive auto-renewal disclosures and cancellation processes. And his new proposed class still overlaps entirely with the proposed California state class in that earlier-filed action (the definitions are identical), and it is subsumed by that action's nationwide class. Plaintiff and his proposed class are therefore already covered by the proposed classes in the North Carolina action, which seeks the same relief for the same conduct against the same parties. Accordingly, under the first-to-file rule, the Court should dismiss this case or stay it until the earlier-filed action is resolved.

In addition, the Court should dismiss Counts IV–VII for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, where applicable, under Rule 9(b). As to Count IV, the CLRA claim, Plaintiff does not allege an actionable misrepresentation or omission. The economic loss rule bars Plaintiff's claims for conversion, restitution, and money had and received

(Counts V–VII), and the Court should dismiss the latter two claims for the additional reason that, as Plaintiff admits, a contract governed his relationship with Nord. Finally, regardless of its other rulings, the Court should dismiss all claims against NordSec Ltd, NordSec B.V., and Nord Security Inc. for lack of personal jurisdiction, as they have no connection to this forum giving rise to Plaintiff's claims.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether this case should be dismissed or stayed in its entirety under the "first-to-file" rule because there is a substantially similar action pending in the Western District of North Carolina, filed by the same counsel, on behalf of overlapping classes, against the same Defendants, alleging the same conduct, and seeking the same relief.

2.    Whether the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to Count IV, because Plaintiff has failed to plead a violation of one of the enumerated acts under the CLRA (Cal. Civ. Code §§ 1750 et seq.).

3.    Whether the economic loss rule bars Plaintiff's claims as to Counts V–VII, such that the counts fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

4.    Whether the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to Count VI, because restitution is not a cause of action, or, in the alternative, because Plaintiff has not pled a quasi-contract claim.

5.    Whether the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to Count VII, for money had and received, because Plaintiff has not pled a quasi-contract claim.

6.    Whether NordSec Ltd, NordSec B.V., and Nord Security Inc. should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## III.    STATEMENT OF FACTS

### A.    Plaintiff Subscribes To NordVPN And Related Services.

Plaintiff alleges that he enrolled in, and paid for, an automatically renewing, two-year plan for NordVPN on or around October 30, 2019. Dkt. 42, Amended Class Action Complaint ("Zeichner Am. Compl.") ¶¶ 23, 49, 63, 93–94. During the sign-up process Plaintiff reached a

FENWICK & WEST LLP
ATTORNEYS AT LAW

checkout page that offered a "2-year plan" for a "Total" price of "$111.41*" for an initial term. *Id.* ¶ 49.[1] The asterisk referred Plaintiff to the following disclosure, on the very same page, which clearly explained the subscription renewal terms:

> The introductory price is valid for the first term of your subscription. Then it will be automatically renewed for an additional 1-year term annually and you'll be charged the <u>then-applicable renewal price</u>. Savings granted by the introductory price are compared to the current renewal price, which is subject to change. But don't worry — we'll always send you a notification e-mail prior to charging. <u>Learn more</u>

*Id.* To complete his subscription purchase, Plaintiff had to take affirmative action, including inputting his email address and payment information on the "payment screen for [Nord]'s enrollment process," and then clicking the "Continue" button. *Id.* This webpage stated: "By submitting your information and continuing to purchase, you agree to our <u>terms of service</u> and <u>privacy policy</u>," the terms of which Plaintiff omits from his Complaint. *Id.* Plaintiff admits that he instantly received a receipt that showed his payment for the purchase. *Id.* ¶ 63. Plaintiff also admits that he "downloaded the NordVPN mobile application." *Id.* ¶ 95.

### B.    Plaintiff Allows His Subscription To Renew Three Times.

Plaintiff allowed his subscription to renew for a one-year period in November 2021, and again in November 2022 and 2023. Zeichner Am. Compl. ¶¶ 98–103. He admits that Nord emailed him a notice before each renewal that disclosed the renewal price, and that his "NordVPN subscription will be renewed," and that he "will be billed by an automatic payment in 30 days unless you cancel before the payment is charged." *Id.* ¶ 73. Plaintiff also admits that he immediately received a receipt that confirmed the renewal payment; the receipt stated that "You can cancel a recurring subscription from your Nord Account" and "You can manage your subscription <u>here</u>," with a hyperlink to Plaintiff's Nord account. *Id.* ¶ 80. Both the renewal notices and receipts provided customer support resources. *Id.* ¶ 73 (link to "<u>Help Center</u>"), ¶ 80 ("Need help? Get in touch at <u>support@nordaccount.com</u>").

---

[1] The screenshots in Plaintiff's amended complaint (Zeichner Am. Compl. ¶¶ 49, 63) show a total price of $111.41 for a two-year subscription for NordVPN, but Plaintiff later alleges that he paid $119.76 for a two-year subscription for NordVPN (*id.* ¶¶ 93–94).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiff alleges that he discovered that his subscription renewed "at some point" after November 2022, and that he attempted to cancel his subscription. *Id.* ¶¶ 100–01. Plaintiff does not allege that he consulted the terms of service or contacted customer support through Nord's website or the mobile app. Indeed, as noted above, he allowed his subscription to renew again in November 2023. *Id.* ¶ 102. Plaintiff did not cancel his subscription until April 23, 2024, allegedly "with the assistance of his counsel." *Id.* ¶ 103.

## C. Defendants

NordSec Ltd, NordSec B.V., and Nord Security Inc. (the "Non-Contracting Defendants") did not participate in the alleged conduct giving rise to this lawsuit. Declaration of Olga Sinkeviciene ("Sinkeviciene Decl.") ¶ 3; Declaration of Geraldas Kasulis ("Kasulis Decl.") ¶ 3; Declaration of Ruta Gorelcionkiene ("Gorelcionkiene Decl.") ¶ 3. They did not sign Plaintiff up for any services, and they did not charge Plaintiff for or provide the consumer services at issue. *Id.* Nor have they ever provided such services. *Id.*

NordSec Ltd is a holding company that once owned the intellectual property of the Nord brand. Sinkeviciene Decl. ¶ 3. It is organized under the laws of England & Wales with its principal place of business in London, England. *Id.* NordSec B.V. is a holding company that currently owns the intellectual property of the Nord brand. Gorelcionkiene Decl. ¶ 3. It is organized under the laws of the Netherlands with its principal place of business in Amsterdam, the Netherlands. *Id.* Nord Security Inc. sells and provides business-to-business services, but not retail consumer services. Kasulis Decl. ¶ 3. It is a Delaware corporation with its principal place of business in Lewes, Delaware. *Id.* Aside from Nord Security Inc., which has a registered office and registered agents in California, the Non-Contracting Defendants have no employees, contractors, or offices in California. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 9. None of the Non-Contracting Defendants owns property in California, ships products into California, or markets or advertises retail consumer services there. Sinkeviciene Decl. ¶¶ 9–14; Gorelcionkiene Decl. ¶¶ 9–14; Kasulis Decl. ¶¶ 10–13. Defendants keep their own finances, hold their own board meetings, have their own corporate records, and generally do not share officers and directors. Sinkeviciene Decl. ¶¶ 4–8; Gorelcionkiene Decl. ¶¶ 4–8; Kasulis Decl. ¶ 4–8; Declaration of Alina Gatsaniuk

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    ("Gatsaniuk Decl.") ¶¶ 4–8; Declaration of Jurgita Baltramiejuniene ("Baltramiejuniene Decl.") ¶¶

2    4–8.

3        **D.    The Earlier-Filed North Carolina Suit Is Nearly Identical To This One.**

4        Plaintiff's counsel filed the complaint in this case on April 26, 2024.  *See* Complaint,

5    *Zeichner v. Nord Sec. Inc. et al.,* 3:24-cv-02462-JSC, Dkt. 1 ("Zeichner Compl.").  Over a month

6    earlier, on March 5, 2024, the same counsel filed a nearly identical lawsuit in the Western District

7    of North Carolina.  *See* Complaint, *Hanscom v. NordSec Ltd. et al.,* 3:24-cv-00277-KDB-DCK,

8    Dkt. 1 (attached as Exhibit A to the Declaration of Jedediah Wakefield in Support of Request for

9    Judicial Notice).  Plaintiff in North Carolina amended his complaint on July 31, 2024.  *See*

10   Amended Complaint, *Hanscom v. NordSec Ltd. et al.,* 3:24-cv-00277-KDB-DCK, Dkt. 50

11   (attached as Exhibit B to the Declaration of Jedediah Wakefield in Support of Request for Judicial

12   Notice) ("Hanscom Am. Compl.").  Plaintiff here then amended *his* complaint.

13       In both cases, plaintiffs allege that the same Defendants "trick consumers into paying for

14   unwanted, pricey subscriptions" for online Nord services, and that Defendants make it hard to

15   cancel those subscriptions.  Zeichner Am. Compl. ¶¶ 1–15, 66–71; Hanscom Am. Compl. ¶¶ 1–15,

16   69–72.  The primary causes of action in both cases are for alleged violations of state auto-renewal

17   and consumer protection statutes.  Zeichner Am. Compl. ¶¶ 132–162; Hanscom Am. Compl. ¶¶

18   107–126.  Both plaintiffs also tack on conversion and various quasi-contract claims.  Zeichner Am.

19   Compl. ¶¶ 163–182; Hanscom Am. Compl. ¶¶ 127–142.[2]

20       Before Plaintiff's amendment here, both plaintiffs sought to represent two identically

21   defined nationwide and state subclasses: "all NordSec customers in the United States who were

22   subjected to Defendants' misleading subscription practices from the earliest allowable date through

23   the date of judgment," and "all NordSec customers in the state of [e.g., California/North Carolina]

24   … who were automatically enrolled into and charged for at least one month of NordSec

25   membership by Defendants at any time from [applicable statute of limitations period] to the date

26   of judgment."  Zeichner Compl. ¶¶ 106–07; Hanscom Am. Compl. ¶¶ 94–95.  Plaintiff now seeks

27   to represent a class of California customers only, those who "were automatically enrolled into and

28   ───────────────────
     [2] Both plaintiffs have (wisely) dropped their negligent misrepresentation claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW

charged for at least one month of Nord Security membership by Defendants at any time from the applicable statute of limitations period to the date of judgment." Zeichner Am. Compl. ¶ 120. This proposed class definition is identical to the proposed state subclasses—which include California—in the amended North Carolina action. *Compare* Zeichner Am. Compl. ¶ 120 *with* Hanscom Am. Compl. ¶ 95. Thus, every member of Zeichner's proposed class would be a member of the nationwide class there, too. *Compare* Zeichner Am. Compl. ¶ 120 *with* Hanscom Am. Compl. ¶¶ 94–95. Both plaintiffs allege that "the Class claims all derive directly from a single course of conduct by Defendants," and that "this case is about the responsibility of Defendants … for their knowledge and conduct in deceiving their customers." Zeichner Am. Compl. ¶ 121; Hanscom Am. Compl. ¶ 96. And they seek the same relief, including an order certifying identical classes and appointing the same lead class counsel. Zeichner Am. Compl. (Prayer for Relief) (a)–(j); Hanscom Am. Compl. (Prayer for Relief) (a)–(m).

## IV.    ARGUMENT

### A.    The Court Should Dismiss Or Stay This Case In Its Entirety Under The "First-To-File" Rule.

"The first-to-file rule is a doctrine of federal comity that allows a district court to decline jurisdiction over a subsequently filed action when a similar action is already pending in another district." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 704 (N.D. Cal. 2021) (transferring later-filed action under "first-to-file" rule). The rule is designed "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Id.* (quoting *Church of Scientology of California v. U.S. Dept. of Army*, 611 F.2d 738 (9th Cir. 1979) (internal marks omitted)). Accordingly, "the rule should not be disregarded lightly," *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292-93 (N.D. Cal. 2013) (citing *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011)), and courts should strive to "maximize economy, consistency, and comity," *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015).

Under the first-to-file rule, courts may dismiss, stay, or transfer the later-filed case. *Wallerstein*, 967 F. Supp. 2d at 1292 (transferring later-filed action); *see also Pacesetter Sys., Inc.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) (affirming dismissal); *Schumann v. Amazon.com Inc.*, No. 3:20-cv-1751-JR, 2021 WL 5069178 (D. Or. July 19, 2021) (staying later-filed action). Courts examine three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of issues. *Kohn,* 787 F.3d at 1241. Even with Plaintiff's amendment, all three factors favor dismissing this case, or at least staying it, pending the outcome of the earlier-filed action.[3]

      ***Chronology of suits.*** In determining which case was filed first, courts look to the date of the original, not amended, complaint. *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). Here, the original Hanscom Complaint was filed on March 5, 2024, and the original Zeichner Complaint was filed on April 26, 2024. The first factor favors application of the rule. *Hill v. Robert's Am. Gourmet Food, LLC,* No. 13-cv-00696-YGR, 2013 WL 3476801, at *3 (N.D. Cal. July 10, 2013) (transferring second action where it was filed eight weeks after first action).

      ***Similarity of parties.*** The rule favors dismissal or stay as long as parties are substantially similar; they need not be identical. *Kohn,* 787 F.3d at 1240 (citing cases). In class actions, "most district courts in this circuit compare 'the putative classes rather than the named plaintiffs.'" *Young*, 526 F. Supp. 3d at 705 (quoting *Pedro v. Millennium Prods., Inc.*, No. 15-cv-05253-MMC, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016) (collecting cases)); *see also Ruff v. Del Monte Corp.*, No. C 12-05251 JSW, 2013 WL 1435230, at *3 (N.D. Cal. Apr. 9, 2013) (finding substantial similarity among three putative class actions). Nord does *not* concede that class certification will be appropriate, but, on a motion to dismiss, courts in this District consider the claims and class definitions as plaintiffs pleaded them. Where, as here, "both classes seek to represent at least some of the same individuals," courts have generally held that the parties are substantially similar for purposes of the first-to-file rule, and will dismiss, transfer, or stay accordingly. *Hill,* 2013 WL

---

[3] Defendants do not seek transfer because venue for Plaintiff's individual claims would not be proper in the Western District of North Carolina. Although Mr. Zeichner would be a member of the proposed nationwide and California class in *Hanscom*, neither he nor Defendants reside there, and the conduct giving rise to Mr. Zeichner's individual claims did not occur there. *See* 28 U.S.C. § 1391; 28 U.S.C. section 1404(a) (permitting transfer only to a district where the case might have been brought); *see also In re Bozic*, 888 F.3d 1048, 1053–54 (9th Cir. 2018) (holding that court may not transfer action under the first-to-file rule to a district in which venue would be improper).

FENWICK & WEST LLP
ATTORNEYS AT LAW

3476801 at *4 (transferring later-filed action where the proposed nationwide and California sub-class in the first-filed action subsumed the proposed California class in the later-filed action); *see also e.g, Wallerstein*, 967 F. Supp. 2d at 1296; *Ickes v. AMC Networks Inc.*, No. 23-cv-00803-SI, 2023 WL 4297577, at *3 (N.D. Cal. June 30, 2023); *Pedro*, 2016 WL 3029681 at *4. The parties are similar here because the class definition for the California class in *Zeichner* is identical to the state subclass definition in *Hanscom*, and as a result, the nationwide class and California state subclass in *Hanscom* subsume the *Zeichner* class. Zeichner Am. Compl. ¶ 120; Hanscom Am. Complaint ¶¶ 94–95. Put simply, Plaintiff Zeichner (and every member of his proposed class) would be a class member in *Hanscom*. Thus, the second factor is also satisfied. *See, e.g., Hilton v. Apple Inc.*, No. C-13-2167 EMC, 2013 WL 5487317, at *7–8 (N.D. Cal. Oct. 1, 2013) (issuing order to show cause why later-filed action should not be transferred where the proposed nationwide and California class in the first-filed action subsumed the proposed California class in the later-filed action); *Young*, 526 F. Supp. 3d at 705 (transferring later-filed action where members of proposed California class would be members of proposed nationwide class in earlier-filed action).

**Similarity of issues.** As with parties, the issues also need only be "substantially similar" for courts to dismiss, stay, or transfer under the first-to-file rule. *Wallerstein*, 967 F. Supp. 2d at 1296. Indeed, "the rule can apply even if the later-filed action brings additional claims." *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 (EDL), 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) (similarity of issues even where later-filed action brought additional claims because the "claims are closely related to the main claims" in earlier-filed action). Moreover, "where claims in the earlier and later-filed lawsuits implicate common facts, courts have found those lawsuits present similar issues." *Pedro*, 2016 WL 3029681 at *5 (citations omitted).

Here, both plaintiffs assert claims for alleged violations of state auto-renewal and consumer protection statutes. Zeichner Am. Compl. ¶¶ 132–162; Hanscom Am. Compl. ¶¶ 107–126. They both also assert claims for conversion and various quasi-contract claims. Zeichner Am. Compl. ¶¶ 163–182; Hanscom Am. Compl. ¶¶ 127–142. All causes of action in both complaints arise from the same alleged conduct: Nord's allegedly deceptive enrollment and cancellation process. *E.g.,* Zeichner Am. Compl. ¶¶ 1–15, 66–71; Hanscom Am. Compl. ¶¶ 1–15, 69–72. Indeed, both

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

plaintiffs allege, verbatim no less, that the (overlapping) classes' claims "all derive directly from a single course of conduct by Defendants," and that "this case is about the responsibility of Defendants … for their knowledge and conduct in deceiving their customers."  Zeichner Am. Compl. ¶ 121; Hanscom Am. Compl. ¶ 96.  And both plaintiffs seek virtually identical relief, including an order certifying the classes and appointing the same counsel as lead class counsel. Zeichner Am. Compl. (Prayer for Relief) (a)–(j); Hanscom Am. Compl. (Prayer for Relief) (a)–(m).  The issues are similar because "the thrust of the lawsuits is identical."  *See, e.g., Wallerstein*, 967 F. Supp. 2d at 1297.

Because all three factors favor applying the "first-to-file" rule, the Court may dismiss this case.  *Pacesetter Sys., Inc.*, 678 F.2d at 97.  But if the Court chooses not to dismiss, it should exercise its discretion to stay the case pending resolution of *Hanscom*.  *Schumann*, 2021 WL 5069178 at *3 (staying later-filed case pending resolution of dispositive motions in earlier filed case under "first-to-file" rule).  Courts examine three factors in ruling on a stay: (1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party if the action is not stayed, and (3) the judicial resources that would be saved.  *Id*. (citing *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)).  Here, all three factors favor a stay.  Plaintiff will suffer no harm, as he seeks the same relief that plaintiff seeks in *Hanscom*, on the same allegations, and, as Plaintiff is a member of the putative classes in *Hanscom*, he cannot recover twice.  In contrast, absent a stay Defendants *will be* subject to the "hardship and inequity of unnecessary and duplicative litigation." *Schumann*, 2021 WL 5069178 at *3.  And "[t]he simultaneous prosecution of two cases litigating the same [issues] in two class actions with all the attendant precertification discovery issues will result in a drain on the Court's resources[.]"  *Id*. at *4.  If the Court does not dismiss, which it certainly may, principles of comity favor a stay.  *Kohn*, 787 F.3d at 1241 (affirming stay where earlier-filed lawsuit involved substantially similar parties and issues); *Hoyt v. Amazon.com, Inc.*, No. 19-cv-00218-JSC, 2019 WL 1411222 (N.D. Cal. Mar. 28, 2019) (balance of equities favored application of the "first-to-file" rule).

1

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      The Court Should Dismiss Counts IV-VII For Failure To State Claims.**

A court may dismiss one or more claims of a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A claim cannot survive a motion to dismiss unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted).  Courts need not credit allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000) (citation omitted), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), or "conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

**1.      The CLRA Claims (Count IV) Should Be Dismissed Because Plaintiff Has Not Alleged An Actionable Misrepresentation Or Omission.**

CLRA claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  The "indispensable elements" of a fraud claim are (1) a misrepresentation (false representation or omission), (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages.  *Id.* at 1105; *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (affirming dismissal of CLRA claim where plaintiffs did not plead statements were false when made or that they detrimentally relied on statements).

Plaintiff alleges violations of CLRA provisions that involve false advertising and false representations: representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have (Cal. Civ. Code § 1770(a)(5); advertising goods or services with intent not to sell them as advertised (*id.* (a)(9)); representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law (*id.* (a)(14)); and representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (*id.* (a)(16)).  Zeichner Am. Compl. ¶ 154.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Plaintiff fails to allege facts establishing that Nord did *any* of these things.  In fact, based

2    on the allegations in the amended complaint, Nord *did* disclose the subscription nature of its

3    services and that Plaintiffs' subscription would renew for one-year terms annually, both during the

4    checkout process and before each renewal.  Zeichner Am. Compl. ¶¶ 49 (image of Nord's

5    enrollment page), 73 (image of renewal notice).  Plaintiff also admits that Nord disclosed that it

6    "has the right to charge Plaintiff and the California Class's payment methods." *Id.* ¶ 154.  Plaintiff

7    does not allege that these statements were false or that Nord concealed them from him, but only

8    that they were "not in compliance with California's Automatic Renewal Law." *Id.*  That is, Plaintiff

9    admits that Nord made the renewal disclosures, but he alleges that it was a misrepresentation, for

10   purposes of the CLRA, that Nord used allegedly non-ARL-compliant font sizes, colors, and

11   placement.  *Id.* ¶¶ 50, 154.

12       Courts have reached different conclusions as to whether an alleged ARL violation, standing

13   alone, supports a CLRA claim.  The better reasoned view, including from this District, is that a

14   mere ARL violation is not enough. *See Robbins v. PlushCare, Inc.*, No. 21-CV-03444-MMC, 2022

15   WL 2988344, at *2 (N.D. Cal. July 28, 2022).  In *Robbins*, like here, the plaintiff alleged the

16   defendant's subscription enrollment webpage was not ARL-compliant. *Id.* at *1.  And, like here,

17   the plaintiff asserted a CLRA claim on grounds that the defendant allegedly "'represented' its

18   services have 'certain characteristics that they do not have'" (i.e., absence of an automatic renewal

19   payment feature) and that defendant "has the right to charge plaintiffs and class members debit

20   cards, credit cards, or third party payment methods without first obtaining their affirmative consent

21   to the agreement containing the automatic renewal terms." *Id.* at *2 (alterations omitted); Zeichner

22   Am. Compl. ¶ 154.  The court held this was not enough to state a CLRA claim: because defendants

23   had in fact disclosed the "terms of the automatic renewal offer," the plaintiff's allegations of ARL

24   non-compliance were not enough "to identify the particular statements made, much less that any

25   such statements were false when made and that she detrimentally relied on those statements."

26   *Robbins*, 2022 WL 2988344 at *2.  That was the correct ruling, and it applies here: Plaintiff alleges

27   that Nord made the disclosures, complaining only that their form did not satisfy certain technical

28   ARL requirements.

In two cases outside this district, courts held that an alleged ARL violation alone does support a CLRA claim. *Zeller v. Optavia LLC*, No. 22-cv-434-DMS-MSB, 2024 WL 1207461, at *6 (S.D. Cal. Mar. 14, 2024); *Farmer v. BarkBox, Inc.*, No. 5:22-cv-1574-SSS-SHKX, 2023 WL 8522984, at *3 (C.D. Cal. Oct. 6, 2023). Nord respectfully submits that those cases reached the wrong result. The CLRA provisions at issue concern *fraudulent misrepresentations* about the nature of goods and services, and their plain language requires more to support a claim than alleged technical ARL disclosure shortcomings, especially where Plaintiff admits Nord's disclosure of the substance. Here, moreover, the alleged conduct and requested recovery is duplicative of Plaintiff's ARL-based UCL claim (Count I), which Nord does not move to dismiss except under the first-to-file rule. The Court should dismiss Plaintiff's duplicative CLRA claim.

### 2. The Economic Loss Rule Bars Plaintiff's Common Law Claims (Counts V-VII).

Under the economic loss rule, "a party to a contract generally cannot recover for pure economic loss…. The rule 'prevents the law of contract and the law of tort from dissolving one into the other.'" *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004)). In other words, "transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law" are not a matter of tort law, unlike transactions "involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Robinson*, 34 Cal. 4th at 988 (2004). "[C]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be to aid rather than discourage commerce." *Id.* at 992. Tort claims are particularly poorly suited to address consumers' disputes about losses related to their relationships with online service providers. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1039 (N.D. Cal. 2021) (economic loss rule barred negligence claim where "Plaintiffs are among 'millions of consumers[]' who use Zoom and have been affected by Zoom's alleged failures"); *see also Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *9 (C.D. Cal. Dec. 11,

FENWICK & WEST LLP
ATTORNEYS AT LAW

2020) ("Because the parties' relationship is governed by a contract, Plaintiffs cannot maintain their claims for unjust enrichment, conversion, or money had and received.").

As in *In re Zoom*, Plaintiff's relationship with Nord is quintessentially commercial. Plaintiff acknowledges that he entered into, and then canceled, a subscription *contract* with Nord for online services. *See, e.g.*, Zeichner Am. Compl. ¶¶ 60–61 (explicitly incorporating Nord's terms of service), 83–90 (same), 93 (acknowledging that Plaintiff "enrolled in a two-year subscription"), 103 (alleging that Plaintiff canceled subscription contract), 104–105 (referring to Nord's "contract offer[]").[4] Accordingly, the economic loss doctrine bars Plaintiff's claims in Counts V–VII. Because Plaintiff's only alleged harm is the loss of money under the contract, no exception to the economic loss doctrine applies. *See* Zeichner Am. Compl. ¶¶ 24 (alleging "lost money"), 137 (same), 143 (alleging "lost money or property"), 149 (same), 157 (alleging "loss of money and/or property"), 167 (alleging "taking of … money"), 169 (same); *In re Zoom*, 525 F. Supp at 1038–40 (finding that no exception to economic loss rule applied when Plaintiff alleged purely economic losses). For this reason, the Court should dismiss Counts V–VII for failure to state a claim.

### 3. Independent Of The Economic Loss Rule, Plaintiff Fails To State Claims For Restitution Or Money Had And Received.

#### a. Restitution (Count VI)

Conceding that California law does not recognize a standalone cause of action for unjust enrichment, Plaintiff has dropped it in favor of a restitution claim. *Compare* Zeichner Am. Compl. ¶¶ 171–176 *with* Zeichner Compl. ¶¶ 164–169. But that name change fails to save the claim; in California, restitution is synonymous with unjust enrichment. *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779 (2003). Just as there is no separate cause of action for unjust enrichment, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020), there is no separate cause of action for restitution, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 675 (2011); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, … or even a remedy … it is synonymous with restitution"). Accordingly, courts in this District routinely

---

[4] Additionally, Plaintiff's first three counts arise under the California Business and Professions Code—an acknowledgement that his claims are commercial, not tort.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    dismiss standalone causes of action for restitution or unjust enrichment for failure to state a claim.

2    *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Robinson v. HSBC*

3    *Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d

4    785, 815 (N.D. Cal. 2011).  This Court should likewise dismiss Plaintiff's restitution claim.

5           In the minority of California cases that have recognized restitution or unjust enrichment as

6    a form of quasi-contractual claim, plaintiffs had to show that "the defendant obtained a benefit from

7    the plaintiff by fraud."  *McBride*, 123 Cal. App. 4th at 388.  When making such a claim, a plaintiff

8    "choose[s] not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election

9    referred to at common law as 'waiving the tort and suing in assumpsit')."  *Id.*  But "[a] plaintiff

10   may not … pursue or recover on a quasi-contract if the parties have an enforceable agreement

11   regarding a particular subject matter."  *Klein v. Chevron USA, Inc.*, 202 Cal. App. 4th 1342, 1388

12   (2012).  In other words, "a plaintiff may not plead the existence of an enforceable contract and

13   simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that

14   the contract may be unenforceable or invalid."  *Tsai v. Wang*, No. 17-cv-00614-DMR, 2017 WL

15   2587929, at *8 (N.D. Cal. June 14, 2017).  Thus, even if the Court entertains Plaintiff's restitution

16   claim as a standalone cause of action, it should still dismiss.  First, Plaintiff has *not* waived tort

17   claims; indeed, he asserts a conversion claim.  Second, Plaintiff acknowledges and affirms the

18   contract between the parties.  *See* Zeichner Am. Compl. ¶¶ 60–61 (explicitly incorporating Nord's

19   terms of service), 83-90 (same), 93 (acknowledging that Plaintiff "enrolled in a two-year

20   subscription"), 103 (alleging that Plaintiff canceled subscription contract), 104-105 (referring to

21   Nord's "contract offer[]").  Third, even if Plaintiff had elected a quasi-contract claim, he does not

22   allege the required facts with anything approaching the particularity required under Rule 9(b) for a

23   fraud claim because, as discussed above, Plaintiff does not allege any actual misrepresentation or

24   omission on which he materially relied.

25          Finally, "plaintiffs cannot assert unjust enrichment claims that are merely duplicative of

26   statutory or tort claims."  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d

27   1070, 1077 (N.D. Cal. 2011).  Plaintiff here "seeks restitution under h[is] § 17200 claim."

28   (Zeichner Am. Compl. ¶¶ 138, 144, 150).  That claim "is based on the same facts as h[is] 'unjust

enrichment' claim, and, consequently, is subject to dismissal as duplicative." *Robbins*, 2022 WL 2988344 at *2 (citing *In re Apple & AT&T iPad Unlimited Data Plan Litig.* and dismissing unjust enrichment claim in a California ARL case).

### b.    Money Had And Received (Count VII)

Like claims for unjust enrichment and restitution, courts dismiss claims for money had and received where there is a contract governing the relationship between the parties, unless the plaintiff also pleads facts establishing that the contract is unenforceable or invalid. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020) (citing *Klein*, 202 Cal. App. 4th at 1389). Like here, where there is a contract governing the subject matter at issue, a claim for money had and received can only survive where "there has been a total failure of consideration." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 230 (2014). Plaintiff acknowledges that he entered a subscription contract with Nord. He does not allege that the contract is invalid or unenforceable, and he admits that he received the services that he paid for. *See e.g.,* Am. Compl. ¶ 95 (admitting Plaintiff downloaded VPN app after subscribing). Accordingly, his claim fails on this basis alone. *Saroya*, 503 F. Supp. 3d at 1000; *Langley Partners, L.P. v. Tripath Tech., Inc.*, No. C-05-4194 SC, 2006 WL 563053, at *7 (N.D. Cal. Mar. 7, 2006) (finding that plaintiff could not bring a "legally feasible" claim for unjust enrichment or money had and received because the parties had a valid and enforceable contract).

But the Court should dismiss even if there were no express contract. To state a claim for money had and received, a plaintiff must allege that "defendant received money intended to be used for the benefit of the plaintiff, that the money was not used for the plaintiff's benefit, and that the defendant has not given the money to the plaintiff." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013) (cleaned up). Thus, there might be a claim for money had and received where a law firm "allegedly misappropriates the proceeds of a settlement that belong to the plaintiff," *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011), or a plaintiff has a lien on or equitable interest in money paid from a third party to the defendant, *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975). There are no such allegations here, and there is no claim for money had and received, including in the auto-renewal context, when a party pays for services and in fact receives

them.  *See Lopez v. YP Holdings, LLC,* No. 18-cv-8791-MWF-MAAx, 2019 WL 6354387, at *5–6 (C.D. Cal. July 9, 2019) (dismissing claim where plaintiff paid for and received auto-renewing advertising services).  Here, Plaintiff admits to paying Nord for NordVPN services (Zeichner Am. Compl. ¶¶ 93–94), and he nowhere alleges that he didn't receive them.  Indeed, he admits that he downloaded the NordVPN application and used the services.  *Id.* ¶ 95–96.

Additionally, a plaintiff must plead that the defendant "is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."  *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010) (citation omitted).  Here, Plaintiff fails to allege a "certain sum" because he "seeks the return of [] money in an amount to be proved at trial."  Zeichner Am. Compl. ¶ 182; *see also Panasonic Corp. of N. Am. v. Buy Cheap Software Inc.*, No. 2:17-cv-9171-AB (PLAx), 2018 WL 6133716, at *3 (C.D. Cal. Aug. 31, 2018) (dismissing where plaintiff alleged precise sum, but also alleged receiving "software of a diminished value"); *Johnson v. GMRI, Inc.*, No. CV F 070283LJODLB, 2007 WL 1490819, at *5 (E.D. Cal. May 21, 2007) ("estimates" in pleadings insufficient).  His claims should be dismissed.

### C.    The Court Should Dismiss All Claims Against The Non-Contracting Defendants For Lack Of Personal Jurisdiction.

Plaintiff bears the burden of establishing personal jurisdiction.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (plaintiff must plead facts sufficient for a prima facie showing of jurisdiction).  "The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction."  *Id.* (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).  In the Ninth Circuit, "personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing *Fireman's Fund Ins. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)).  California's long-arm statute provides for jurisdiction so long as it comports with the state and federal Constitution.  Cal. Code of Civ. Proc. § 410.10.  To satisfy federal due process, the plaintiff must establish that the defendant has "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal marks

2    omitted). Plaintiff has not met his burden here.

### 1. There Is No General Jurisdiction Over Any Defendant.

4    General jurisdiction over a foreign corporation exists only when its "affiliations with the

5    State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

6    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Daimler*

7    *AG v. Bauman*, 571 U.S. 117, 127 (2014). After *Daimler*, a corporation is generally "at home"

8    only where it is incorporated or has its principal place of business. *See Daimler*, 571 U.S. at 127.

9    There is no general jurisdiction over any defendant here. NordSec Ltd is an English company with

10   its principal place of business in London, England; NordSec B.V. is a Netherlands company with

11   its principal place of business in Amsterdam, the Netherlands; Nord Security Inc. is a Delaware

12   company with its principal place of business in Lewes, Delaware; Nord is a Panama company with

13   its principal place of business in Amsterdam, the Netherlands; and Tefincom is a Panama company

14   with its principal place of business in Panama City, Panama. Sinkeviciene Decl. ¶ 3;

15   Gorelcionkiene Decl. ¶ 3; Kasulis Decl. ¶ 3; Gatsaniuk Decl. ¶ 3; Baltramiejuniene Decl. ¶ 3. The

16   unsupported allegation that Defendants "conduct substantial business in California" (Zeichner Am.

17   Compl. ¶ 19) cannot establish general jurisdiction. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502

18   (9th Cir. 2023) (noting that the court need not assume the truth of allegations that are contradicted

19   by affidavit) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011)).

### 2. There Is No Specific Jurisdiction Over The Non-Contracting Defendants.

22   There is no specific jurisdiction over a defendant unless: (1) the defendant purposefully

23   directed its activities or consummated some transaction with the forum or a forum resident, or

24   performed some act by which it purposefully availed itself of the privilege of conducting activities

25   in the forum, thereby invoking the benefits and protections of its laws; (2) the claim is one which

26   arises out of or relates to the defendant's forum-related activities; *and* (3) the exercise of jurisdiction

27   comports with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374

28   F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). This test "ensures that a

FENWICK & WEST LLP
ATTORNEYS AT LAW

defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal marks omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). "The plaintiff bears the burden of satisfying the first two prongs of the [minimum contacts] test." *Schwarzenegger*, 374 F.3d at 802. Plaintiff does not come close to establishing specific personal jurisdiction over the Non-Contracting Defendants.

**a.      Plaintiff Has Alleged No Facts Establishing Purposeful Availment Or Direction By The Non-Contracting Defendants.**

"A purposeful availment analysis is most often used in suits sounding in contract." *Id*. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id*. (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)). Plaintiff cannot satisfy his burden under either test.

Plaintiff does not allege facts showing that the Non-Contracting Defendants maintained offices, agents, or property in California; or how the Non-Contracting Defendants reached into California to solicit or initiate retail consumer business; or that they deliberately engaged in significant or long-term business activities here; or that they made any in-person contact with any resident of this state with respect to retail consumer VPN or related services. Nor does he allege any communications or contract with the Non-Contracting Defendants. Instead, he relies on conclusory allegations that Defendants are alter egos and "have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the privileges of conducting business in

FENWICK & WEST LLP
ATTORNEYS AT LAW

California by marketing and selling products and services in California." Zeichner Am. Compl. ¶ 19. That is plainly insufficient for a pleading. Aside from Nord Security Inc. (which provides business-to-business VPN services), the Non-Contracting Defendants have no employees, agents, or offices in California. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 9. None of the Non-Contracting Defendants owns property in California. Sinkeviciene Decl. ¶ 9; Gorelcionkiene Decl. ¶ 9; Kasulis Decl. ¶ 10. And they do not ship products into California or market or advertise retail consumer VPN or related services in California. Sinkeviciene Decl. ¶¶ 10-14; Gorelcionkiene Decl. ¶¶ 10-14; Kasulis Decl. ¶¶ 11-13. Plaintiff has not established purposeful availment or purposeful direction by the Non-Contracting Defendants. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden").

### b. Plaintiff's Claims Do Not Arise From Or Relate To The Non-Contracting Defendants' Contacts With California, If Any.

Under the second prong of the Ninth Circuit's test for specific personal jurisdiction, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004). When analyzing this prong, courts in the Ninth Circuit have traditionally asked whether defendants' forum-related activity was a "but for" cause of plaintiff's harm, such that there is a "direct nexus … between [a defendant's] contacts [with the forum state] and the cause of action." *Yamashita*, 62 F.4th at 504 (citations omitted); *see also Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Courts do not require strict causation, but "[t]hat does not mean anything goes." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). After *Ford*, the Ninth Circuit has held that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts," or "if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita*, 62 F.4th at 505-06.

Plaintiff cannot establish "causation" or "relatedness" with respect to the Non-Contracting Defendants. Plaintiff originally contracted with Tefincom only. Gatsaniuk Decl. ¶ 3. Presently,

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Nord alone offers NordVPN and the related services that Plaintiff subscribed to, and it is Nord that

2   operates the website where Plaintiff purchased his subscription.  Baltramiejuniene Decl. ¶ 3.  The

3   Non-Contracting Defendants did not enroll Plaintiff in any consumer services, charge him for any

4   consumer services, or provide any consumer services to him—or anyone, for that matter.

5   Sinkeviciene Decl. ¶ 3; Gorelcionkiene Decl. ¶ 3; Kasulis Decl. ¶ 3.  Thus, even if the Non-

6   Contracting Defendants did have contacts with California, and Plaintiff alleges none, there would

7   be no jurisdiction over them because Plaintiff's claims could not "arise from or relate to" those

8   contacts.  *See Yamashita*, 62 F.4th at 506 (9th Cir. 2023) (no personal jurisdiction where Plaintiff's

9   claims do not arise from or relate to forum contacts).

10
11          **c.      The Exercise Of Jurisdiction Over The Non-Contracting Defendants Would Be Unreasonable.**

12          Absent any activity by the Non-Contracting Defendants in California giving rise to

13   Plaintiff's claims, the exercise of jurisdiction against the Non-Contracting Defendants would be

14   unreasonable.  *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065–66 (9th Cir.

15   1985) (even if minimum contacts test met, no personal jurisdiction where exercise of jurisdiction

16   was unreasonable).  The Ninth Circuit evaluates several factors in determining "reasonableness":

17   (1) the extent of the purposeful interjection into the forum state; (2) the burden on defendant of

18   defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the

19   forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

20   controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief;

21   and (7) the existence of an alternative forum.  *See id.*  Because they are foreign parties that did not

22   direct any actions at California giving rise to Plaintiff's claims, the forum state's interest in

23   adjudicating disputes against the Non-Contracting Defendants is low, and the burden on them of

24   having to defend would be at its maximum.  Their absence will not burden Plaintiff, who may

25   proceed against Nord and Tefincom on the claims remaining after motion to dismiss.  Because it

26   would be unreasonable for the Court to exercise jurisdiction over the Non-Contracting Defendants,

27   the Court should dismiss.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 3.    Defendants Are Not Alter Egos Of Each Other.

Because Plaintiff cannot establish general or specific jurisdiction over the Non-Contracting Defendants, he attempts to rely on an alter ego theory, almost entirely on "information and belief." Zeichner Am. Compl. ¶¶ 25–36.   But disregarding the corporate form is an "extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000). Accordingly, an alter ego theory of jurisdiction may be employed "only in narrowly defined situations when the ends of justice so require." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992 (E.D. Cal. 2012); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 807 (9th Cir. 2002) ("[T]he alter ego rule is generally applied with caution.").   To plead an alter-ego theory of jurisdiction, a plaintiff must allege specific facts showing that "(1) there is such unity of interest and ownership that the separate personalities of the entities no longer exist and (2) failure to disregard their separate identities would result in fraud or injustice." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (J. Corley) (internal marks omitted); *see also Apple Inc. v. Allan & Assocs. Ltd.,* 445 F. Supp. 3d 42, 52 (N.D. Cal. 2020) (citing *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1021 (9th Cir. 2017)).[5]

Courts will dismiss under the "[t]he unity of interest and ownership prong" unless the plaintiff can show "that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015) (dismissing alleged alter ego defendant where Plaintiff failed to allege facts establishing that subsidiary was "mere instrumentality" of parent) (internal marks omitted).   "This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.*

---

[5] "Before the Supreme Court's *Daimler* decision, this Circuit permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the 'agency' test and the 'alter ego' test." *Ranza*, 793 F.3d at 1071.  "The agency test required a plaintiff to show the subsidiary performed services that were sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id*. (internal marks omitted).  But *Daimler* invalidated that agency test, holding that "focusing on whether the subsidiary performs 'important' work the parent would have to do itself if the subsidiary did not exist 'stacks the deck, for it will always yield a pro-jurisdiction answer.'" *Id*. (quoting *Daimler*, 571 U.S. at 135–36).  Therefore, the agency test is no longer available.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

(internal marks omitted).  Factors to examine include "commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sandoval v. Ali,* 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538–39).  Plaintiff has the prima facie burden of establishing alter ego jurisdiction.  *See Allan & Assocs. Ltd.*, 445 F. Supp. 3d at 52–53; *Stewart*, 81 F. Supp. 3d at 953.

Notwithstanding his advanced notice of Defendants' arguments and the facts in their declarations, Plaintiff alleges no facts from which the Court could infer that any one defendant "dictates every facet" of the other; thus, the Court should reject his alter ego theory of jurisdiction. *E.g.,, Hall v. Club Corp. of Am.*, 33 F. App'x 873, 875 (9th Cir. 2002) (allegation that defendant entity is the "alter ego" of another entity "would not, per se, confer specific jurisdiction over the former entity"); *Sandoval*, 34 F. Supp. 3d at 1040–41 (dismissing alleged alter ego defendants because plaintiff's allegations based "on information and belief" were "too conclusory to survive a motion to dismiss); *Artec Grp., Inc. v. Klimov,* No. 15-cv-03449-RMW, 2015 WL 9304063, at *7 (N.D. Cal Dec. 15, 2015) ("Plaintiff's bare allegations that [the corporate defendants] are alter egos of the individual defendants are insufficient.").

Each Defendant observes corporate formalities.  Sinkeviciene Decl. ¶¶ 4–8; Gorelcionkiene Decl. ¶¶ 4–8; Kasulis Decl. ¶ 4–8; Gatsaniuk Decl. ¶¶ 4–8; Baltramiejuniene Decl. ¶¶ 4–8.  There is no comingling of funds or absence of corporate records, and Defendants generally do not share officers and directors.  *Id.*  Thus, the Non-Contracting Defendants are not mere façades for the operation of Nord and Tefincom, or vice versa.  *See Ranza*, 793 F.3d at 1073–74 ("Ranza has presented no evidence that NEON is undercapitalized, that the two entities fail to keep adequate records or that Nike freely transfers NEON's assets, all of which would be signs of a sham corporate veil."); *Stewart*, 81 F. Supp. 3d at 953 (no unity of interest where plaintiff failed to establish five out of the eight factors).

Plaintiff alleges that all Defendants are "closely related in ownership" (Zeichner Am. Compl. ¶ 33), but, even if true, it is well established that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073; *Apple Inc*., 445 F. Supp. 3d at 54 (same); *Sandoval*, 34 F. Supp. 3d at 1040 (same); *Stewart*, 81 F. Supp. 3d at 956 (same; holding no unity of interest even where "same two people [were] officers and directors of all three corporations"). Nor would it establish that Defedants were alter egos of each other if they shared trademarks or held themselves out as a single entity in press releases, marketing materials, or online generally, as Plaintiff alleges that they do (Zeichner Am. Compl. ¶ 33). "[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (no unity of interest even where evidence showed "that CVS Health wholly owns CVS Pharmacy, the two entities have overlapping officers and directors, CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes, and CVS Health has been involved in discrete business decisions of CVS Pharmacy."); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1007 (N.D. Cal. 2020) (J. Corley) (citing *Corcoran* with approval in dismissing alleged alter ego defendant); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1296 (S.D. Cal. 2003) (sharing trademarks insufficient for alter ego jurisdiction); *see also Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) (website "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"). Accordingly, Plaintiff has not alleged, and cannot allege, facts sufficient to satisfy the unity of interest prong.

He also has not alleged, nor can he allege, that it would be inequitable to observe the corporate form here—that is, to treat Defendants as separate entities (which they are). *Apple Inc*., 445 F. Supp. 3d at 55–56 (dismissing alleged alter ego defendant because "[e]ven if Plaintiff had met its prima facie burden of showing unity of interest," he failed to "show[] that an injustice will result if the corporate veil is not pierced.") (citing *Stewart*, 81 F. Supp. 3d at 956). "California courts generally require evidence of some bad-faith conduct to fulfill the second prong of alter-ego

FENWICK & WEST LLP
ATTORNEYS AT LAW

liability, [and] that bad-faith conduct must make it inequitable to recognize the corporate form." *Pacific Mar. Freight, Inc., v. Foster*, No. 10-cv-0578-BTM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010). "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." *Id.* There is nothing to suggest that dismissing the Non-Contracting Defendants—who had nothing to do with Plaintiff's subscription or any alleged injury from it— would frustrate Plaintiff's claim, perpetuate fraud, or result in the avoidance of personal liability. Again, Plaintiff may proceed against Nord and Tefincom (the relevant parties) on claims that survive motion to dismiss. Gatsaniuk Decl. ¶ 3; Baltramiejuniene Decl. ¶ 3. There is therefore no reason to drag the Non-Contracting Defendants through this litigation. *Stewart*, 81 F. Supp. 3d at 969 (holding no inequitable result and dismissing alleged alter ego defendants where "there is no dispute that the party to the Agreement at issue … is defending this lawsuit and is able to satisfy judgment").

Defendants are not alter egos of each other, and there is no personal jurisdiction over any one of them based on the alleged conduct of another. The Court should dismiss the Non-Contracting Defendants for lack of personal jurisdiction.

## V.    CONCLUSION

Defendants respectfully request that the Court dismiss this case without prejudice or stay it pending resolution of *Hanscom*. Alternatively, Counts IV–VII should be dismissed with prejudice for failure to state a claim. In addition, all claims against NordSec Ltd, NordSec B.V., and Nord Security Inc. should be dismissed with prejudice for lack of personal jurisdiction.

Dated:   September 5, 2024                    FENWICK & WEST LLP

                                             By: */s/ Jedediah Wakefield*
                                                  Jedediah Wakefield

                                             Attorneys for Defendants
                                             NORDSEC LTD, NORDSEC B.V.,
                                             NORDVPN S.A., NORD SECURITY INC.,
                                             and TEFINCOM S.A. d/b/a NordVPN