UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN ZEICHNER,<br><br>   Plaintiff,<br><br> v.<br><br>NORD SECURITY INC., et al.,<br><br>   Defendants. | Case No. 24-cv-02462-JSC<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

  This putative class action is brought on behalf of California consumers that purchased, and were auto-enrolled in, at least one month of a Nord Security membership. Plaintiff's claims arise from allegations that Defendants employ deceptive subscription tactics in violation of California's Automatic Renewal Law ("ARL"), CAL. BUS. & PROF. CODE § 17600 et seq., and trick consumers into paying for unwanted security services. Plaintiff asserts seven causes of action: Count (1) violation of California's Unfair Competition Law ("UCL") for unlawful business practices; Count (2) violation of the UCL for unfair business practices; Count (3) violation of the UCL for fraudulent business practices and false advertising; Count (4) violation of the California Consumer Legal Remedies Act ("CLRA"); Count (5) conversion; Count (6) restitution; and Count (7) money had and received.

  Defendants move to dismiss or stay this action according to the first-to-file rule, since a similar action has already been filed in the Western District of North Carolina. *See Hanscom v. NordSec Ltd. et al.*, 3:24-cv-00277 (W.D.N.C. Mar. 5, 2024). In the alternative, Defendants move to dismiss Counts 4-7 under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Further, Defendants move to dismiss all claims against NordSec Ltd., NordSec B.V., and Nord Security Inc. for lack of personal jurisdiction.

1     Having considered the parties' submissions, and with the benefit of oral argument heard on
2  November 14, 2024, the Court DENIES the motion to dismiss or stay the case based on the first-
3  to-file rule. The Court GRANTS IN PART and DENIES IN PART the motion to dismiss under
4  Rule 12(b)(6). Further, the Court GRANTS the motion to dismiss for lack of personal jurisdiction
5  over Defendants NordSec Ltd., NordSec B.V., and Nord Security Inc.

**DISCUSSION**

**I.   MOTION TO DISMISS OR STAY UNDER THE FIRST-TO-FILE RULE**

Defendants move to dismiss—or in the alternative, stay—this case per the first-to-file rule because of the *Hanscom* action filed in the Western District of North Carolina prior to this suit. "The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). However, on November 19, 2024, the district court dismissed *Hanscom* for lack of subject-matter jurisdiction. *See Hanscom v. NordSec Ltd., et al.*, No. 3:24-cv-00277, 2024 WL 4833670 (W.D.N.C. Nov. 19, 2024). Without a predicate suit, the first-to-file rule no longer applies. To dismiss or stay the instant case at this juncture would serve no purpose.

Therefore, the Court DENIES the motion to dismiss or stay this case.

**II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

To exercise personal jurisdiction over a nonresident defendant, the court must establish the defendant had at least "minimum contacts" with the forum "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). Absent a federal statute governing personal jurisdiction here, the Court applies California's long-arm statute to determine the Court's reach. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). The statute permits the exercise of personal jurisdiction "to the extent permitted by the Due Process Clause of the Constitution." *Id*. (citing Cal. Code Civ. P. § 410.10).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

2

1    plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374

2    F.3d at 800.  The Court assumes the truth of any uncontested allegations, but where facts are

3    disputed, supporting evidence or affidavits are required to establish jurisdiction.  *AMA*

4    *Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020).

5          Defendants argue the claims against three entities—NordSec Ltd., NordSec B.V., and

6    Nord Security Inc.—must be dismissed for lack of personal jurisdiction.  NordSec Ltd. is

7    organized under the laws of England and Wales, and its principal place of business is London,

8    England.  (Dkt. No. 42 ¶ 27.)   NordSec B.V. is organized under the laws of the Netherlands, and

9    its principal place of business is Amsterdam, the Netherlands.  (*Id*. ¶ 28.)  Nord Security Inc. is a

10   Delaware corporation, and its principal place of business is Lewes, Delaware.  (*Id*. ¶ 30; Dkt. No.

11   44-3.)  Plaintiff does not contest a lack of general personal jurisdiction over these defendants.

12   Rather, Plaintiff argues there is specific personal jurisdiction since the entities are alter egos of

13   those defendants subject to the Court's jurisdiction.

14       **A.**    **Alter Ego Theory**

15         In a personal jurisdiction analysis, a court may impute contacts with the forum to a

16   nonresident defendant under an alter ego theory when a "relationship exists among sister

17   companies that are alter egos of each other and operate as part of a single enterprise." *Stewart v.*

18   *Screen Gems-EMI Music, Inc*., 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015).  The alter ego theory of

19   personal jurisdiction comprises two prongs: "(1) that there is such unity of interest and ownership

20   that the separate personalities of the two entities no longer exist and (2) that failure to disregard

21   their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co*., 851

22   F.3d 1015, 1021 (9th Cir. 2017).

23         Plaintiff argues Defendants extend themselves out as a single, unified company in press

24   releases as well as other public-facing documents.  Based on these allegations, Plaintiff asserts

25   Defendants function as one entity, and it would be unjust to allow certain defendants to be

26   dismissed given the allegations of widespread consumer fraud presented by the Amended

27   Complaint.  Defendants provide sworn affidavits of executives from each of the entities regarding

28   their adherence to corporate formalities and discrete functioning.  The Court first considers

3

whether Plaintiff has sufficiently alleged Defendants have unity of interest and ownership, and second, whether they have plausibly alleged fraud or injustice would result without piercing the corporate veil.

### 1. Unity of Interest and Ownership

"The 'unity of interest' theory 'envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'" *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). Disregarding the corporate entity is an "extreme remedy," and courts will only pierce the corporate veil in "exceptional circumstances." *Id*.

Under California law, a court looks to various factors when determining whether there is a unity of interest among corporate entities necessary to establish alter egos. *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017). These factors include:

> [1] inadequate capitalization, [2] commingling of funds and other assets, [3] holding out by one entity that it is liable for the debts of the other, [4] identical equitable ownership, [5] use of the same offices and employees, [6] use of one as a mere conduit for the affairs of the other, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Id*. After considering the relevant allegations and supporting affidavits, the Court determines Plaintiff has failed to plausibly allege Defendants are alter egos of one another.

To begin, Defendants seeking dismissal observe corporate formalities indicating separation. Each maintains separate corporate records, including "financial records, minutes from shareholder meetings, corporate tax filings, and other corporate documents, such as the articles of association and corporate resolutions." (Dkt. Nos. 44-3, 44-4, 44-5.) Each has its own corporate bylaws, articles of association, or corporate statutory documents. (*Id*.) Defendants also do not share officers or directors and have their own boards while holding their own shareholder meetings. (*Id*.) Further, declarations submitted by directors of NordSec Ltd., NordSec B.V., and Nord Security Inc, confirm Defendants possess independent accounts with funds sufficient to operate their businesses. (*Id*.) Plaintiff does not contest these facts, and therefore, factors 2, 7, 8,

4

1    and 9 from *Daewoo Elecs. Am. Inc*, 875 F.3d at 1250, weigh in favor of Defendants.  *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020) (relying on unrebutted declarations to establish no unity of interest).

Plaintiff's allegations and evidence do not otherwise make a *prima facie* showing of unity of interest and ownership.  Much of Plaintiff's argument relies on an impact report published online by Nord Security in 2023.  (Dkt. No. 50-3.)  This document shows a single valuation for Nord Security and does not mention the entities seeking dismissal.  (*Id*.)  It also lists the total number of employees for Nord Security and describes itself as a "global team" without mentioning the individual Defendant entities.  (*Id*.)  But representations of a single "Nord Security" entity made online do not establish the requisite unity of interest for an alter ego theory.  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("[S]eparate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos.").  The impact report focuses on Nord Security's social improvement priorities, such as "changing the internet for good, decreasing [] carbon footprint, supporting others, and embracing transparency," as well as other ESG goals.  (Dkt. No. 50-3.)  Plaintiff claims this report—particularly the content noted above—indicates Defendants share capitalization, are liable for each other's debts, and share employees and offices.  But Plaintiff's inferences are not plausibly drawn from the report.  This kind of online content meant to positively market the Nord Security brand does not indicate a sham corporate veil; rather, it is "marketing puffery" insufficient to show unity of interest and day-to-day control of the entities seeking dismissal.  *Payoda, Inc. v. Photon Infotech, Inc*., No. 14-cv-04103, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015).  So, this information does not permit a plausible inference that factors 1, 3, and 5 above indicate Defendants are alter egos.

Plaintiff further asserts the Nord Security website, a Nord Security press release, shared use of trademarks online, and the LinkedIn pages of the Nord Security founders support an inference of unity of interest.  (Dkt. Nos. 50-1 – 50-2, 50-4 – 50-7.)  Again, a common online presence or brand does not "rise to the level of unity of interest required to show companies are alter egos."  *Corcoran*, 169 F. Supp. 3d at 984; *see also Reynolds*, 481 F. Supp. 3d at 1006-07

5

(N.D. Cal. 2020) (collecting cases).

Three allegations comprise the remainder of Plaintiff's argument: 1) a board of "advisors" allegedly serves Nord Security, without distinguishing among the Defendant entities; 2) a venture capital firm allegedly invested $100 million in Nord Security without distinguishing among the Defendant entities; and 3) Defendants share legal counsel.  Plaintiff argues the investment supports an inference of shared capitalization and commingling of funds.  Even assuming the truth of Plaintiff's allegation, a parent corporation's sharing of subsidiary entity figures in financial statements is not evidence of a sham corporate veil.  *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-cv-05058, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015) ("[T]he fact that a parent corporation reports the financial results of its subsidiaries in the parent's financial statements is not proof of an alter ego relationship. . . .").  Otherwise, Plaintiff does not cite any authority to establish the remaining two allegations, without more, are sufficient to support a plausible inference that Defendants are alter egos.

### 2. Resulting Fraud or Injustice

"The second requirement for alter ego liability is that there must be 'an inequitable result if the acts in question are treated as those of the corporation alone.'"  *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019).  A court looks to "[e]vidence of past fraudulent conduct or injustice" in forming the corporate entities to determine the existence of a sham corporate veil.  *Reynolds*, 481 F. Supp. 3d at 1009 (citing *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1112–13 (9th Cir. 1979) (holding that plaintiffs did not satisfy the alter ego test's second prong because "there was no evidence of any 'fraudulent intent in forming the corporation'")).  Plaintiff has failed to plausibly allege an inequity will result should the moving Defendants be dismissed.

Plaintiff's lone argument on this second prong is that dismissing these Defendants for lack of personal jurisdiction would allow them to escape responsibility for the consumer fraud alleged in the Amended Complaint.  This argument misunderstands the relevant standard.  The question is not whether Defendants' alleged conduct was unjust, but rather whether the formation of the corporate structure at issue was done in bad faith.  *See Reynolds*, 481 F. Supp. 3d at 1009

6

1  (collecting cases). Under Plaintiff's theory of inequity, the second prong of the alter ego test
2  would be pointless, since a plaintiff could always point to the alleged bad conduct underlying the
3  complaint as sufficient evidence. Further, the two defendants involved in the agreement with
4  Plaintiff still remain in this action and are available to "answer Plaintiff's claim and satisfy any
5  potential judgment." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 957 (N.D. Cal.
6  2015). Plaintiff does not come close to plausibly alleging an inequity that results from
7  maintaining Defendants' corporate separation.

### 3. Request for Jurisdictional Discovery

"A district court has discretion in permitting a plaintiff to conduct jurisdictional discovery." *Reynolds*, 481 F. Supp. 3d at 1009 (citing *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). The discovery request should be granted "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). However, "where a plaintiff's claim 'of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.'" *Reynolds*, 481 F. Supp. 3d at 1009 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). Plaintiff has not shown a basis for jurisdictional discovery here.

As discussed above, Plaintiff does not controvert the sworn declarations and specific denials submitted by Defendants on their observance of corporate formalities, distinct leadership, and separate financial accounts. Each of these uncontested factors weighs against the plausibility of an alter ego relationship. Further, Plaintiff's remaining allegations of unity of interest rely on Nord Security's common branding and online marketing. Drawing inferences in favor of the plaintiff, such allegations still do not establish an alter ego relationship, and Plaintiff has advanced no other argument as to what kinds of information would be uncovered through jurisdictional discovery that might alter this analysis. Finally, even if discovery would establish a unity of interest and ownership among Defendants, Plaintiff has not explained how those facts might then show the required inequity under the second prong of the alter ego test. The defendants who

entered into the subscription agreement with Plaintiff remain before the Court to satisfy a judgment, and the Court does not see how jurisdictional discovery would disturb this reasoning.

Therefore, the Court exercises its discretion to decline to permit jurisdictional discovery.

\* \* \*

After considering the relevant allegations and supporting affidavits, the Court determines Plaintiff has not plausibly pled an alter ego relationship among Defendants. From these allegations, there is not sufficient unity of interest among Defendants, and no fraud or injustice would result from leaving the entities separate. Further, no jurisdictional discovery is warranted here. Therefore, the Court GRANTS the motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Defendants NordSec Ltd., NordSec B.V., and Nord Security Inc.

## III.  RULE 12(b)(6) MOTION TO DISMISS

In adjudicating the motion to dismiss under Rule 12(b)(6), the Court assumes the truth of the allegations and draws inferences in favor of the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). However, conclusory statements are not entitled a presumption of truth and may be discounted. *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012).

Further, Plaintiff's CLRA claim sounds in fraud, and per Federal Rule of Civil Procedure 9(b), must be pled with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies [to UCL and CLRA claims]."). So, the Court considers whether the Amended Complaint, (Dkt. No. 42), properly alleges "the time, place, and specific content of [any] false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 558 (9th Cir. 2010).

Defendants argue the CLRA claim should be dismissed because Plaintiff fails to allege a misrepresentation or omission since Defendants disclosed the Terms and Conditions, including the auto-renewal provision, at the time of sale. As to Plaintiff's common law claims, Defendants assert the economic loss rule bars recovery under those tort theories. In the alternative, Defendants argue the claims for "restitution" and "money had and received" have not been

8

properly pled or are duplicative. The Court considers each argument in turn.

### A. Count 4: California Consumer Legal Remedies Act

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a). In considering a CLRA claim, the court evaluates the alleged unfair or deceptive acts from the perspective of a reasonable consumer. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.")). An omission may serve as the basis of a CLRA claim, but "to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). At base, a well-pleaded CLRA claim sounding in fraud must show: 1) the consumer was exposed to an unlawful practice as set out in Section 1770; 2) the consumer relied on the misrepresentation; and 3) the consumer was damaged by the unlawful practice. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1182 (N.D. Cal. 2021). Plaintiff has alleged with particularity a CLRA claim.

To start, Plaintiff alleges Defendants engaged in multiple unlawful practices as outlined in Section 1770(a) of the California Civil Code and its subsections. These include:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have . . .
>
> (9) Advertising goods or services with intent not to sell them as advertised . . .
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law . . .
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code § 1770(a)(5), (9), (14), (16). To substantiate these allegations, Plaintiff describes

1    Defendants' violations of the ARL, such as: failure to disclose key details of the cancellation
2    policy and how to cancel in the fine print on Defendants' website, (Dkt. No. 42 ¶ 53); failure to
3    disclose the cancellation policy or methods of cancellation at the time of consumer online
4    checkout, (*id.* ¶¶ 55-56); and failure to disclose the timing or manner of recurrent billing, (*id.*
5    ¶¶ 59-61, 74-76). These allegations fall within the CLRA's prohibited conduct, particularly
6    California Civil Code §§ 1770(a)(5) and (a)(9) above, which address advertisements or
7    representations about a product that are untrue or when the seller does not intend to sell the
8    product as advertised. To wit, Plaintiff alleges Defendants advertised their product as though it
9    did not automatically renew without consumer consent, when in actuality, the subscription did
10   renew, and Defendants intended as much. These alleged violations of the ARL constitute material
11   omissions by Defendants arising from a statutorily prescribed duty. *Rattagan v. Uber Techs., Inc.*,
12   17 Cal. 5th 1, 40 (2024) ("A duty to disclose a material fact can arise if (1) it is imposed by statute
13   . . . .").

14   Further, Plaintiff alleges discrepancies in Defendants' representations about when and how
15   they will bill for an automatically renewing subscription. For instance, Plaintiff cites the Terms of
16   Service provision discussing auto-renewal, indicating a reasonable consumer would understand
17   that charges for the subscription occur at the *end* of a subscription period. (Dkt. No. 42 ¶ 60.)
18   Plaintiff then identifies a separate "terms document" published by Defendants, which represents
19   contradictory information—that subscriptions are renewed *at least 14 days prior* to the end of the
20   subscription period, or contrarily, that subscriptions will be renewed after the *end* of an initial
21   plan. (*Id.* ¶ 61.) Such allegations plausibly state an additional basis for misrepresentation beyond
22   the ARL-related omissions above.

23   These allegations, combined with Plaintiff's subsequent allegations that he would not have
24   purchased Defendants' product had he known this information, and was thereafter damaged by
25   recurring subscription charges he did not want, plausibly state a CLRA claim. (*Id.* ¶¶ 93-96, 109-
26   110.)

27   Defendants counter by citing *Robbins v. PlushCare, Inc.*, No. 21-cv-03444, 2022 WL
28   2988344 (N.D. Cal. July 28, 2022), which they argue holds an alleged ARL violation alone does

not establish a CLRA claim. The Court disagrees with Defendants' reading of *Robbins*. In *Robbins*, the plaintiff brought several causes of action against the defendant, including a CLRA claim, for failure to include autorenewal terms within "visual proximity" of consent to those terms. *Id*. at *1. There, the court noted the plaintiff had not identified the specific statements constituting misrepresentation nor reliance on any such statements. *Id*. at *2. The court did not hold, as a matter of law, that ARL violations cannot serve as the basis for a CLRA claim; rather, the court held the plaintiff had failed to allege reliance and—to the extent the plaintiff alleged false statements were made—failed to identify the specific statements. *Id*. Here, Plaintiff has alleged with particularity the omissions that constitute misrepresentation and has alleged reliance— elements essential to the CLRA claim. *Robbins* is therefore distinguishable and does not disturb the Court's reasoning.[1]

Accordingly, the Court DENIES the motion to dismiss the CLRA claim.

### B. Count 5: Conversion

Next, Defendant argues for dismissal of the conversion claim based on the economic loss rule. "[The economic loss rule] requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Indeed, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *R Power Biofuels, LLC v. Chemex LLC*, No. 16-cv-00716, 2016 WL 6663002, at *4 (N.D. Cal. Nov. 11, 2016) (citing *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003)). Thus, "[c]laims of fraud and intentional misrepresentation that are independent of a breach of contract are not subject to the economic loss rule," and "where there has been intentional misconduct, [the rule] does not apply." *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, No. 14-cv-05318, 2015 WL 3638555, at *4 (N.D. Cal. June 11, 2015)

---

[1] Indeed, other courts have similarly permitted a CLRA claim grounded in ARL violations to advance. *See, e.g.*, *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 870 (N.D. Cal. 2019) (denying motion to dismiss CLRA claim based on alleged ARL violations); *Leventhal v. Streamlabs LLC*, No. 22-cv-01330, 2022 WL 17905111, at *7 (N.D. Cal. Dec. 23, 2022) (same).

11

(citation omitted) (cleaned up).  Defendants' argument here is unavailing.

The economic loss rule does not apply to bar the conversion claim because it does not arise out of a breached contractual promise.  Plaintiff has not alleged the conversion occurred due to breached obligations under his contract with Defendants; rather, he alleges the conversion resulted from Defendants' misrepresentations and omissions grounded in their duties under the ARL. "[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." *Rattagan*, 17 Cal. 5th at19.  Such is the case here, where Plaintiff has alleged an omission based on statutorily prescribed ARL duties separate from those set out in the contract.  The existence of a contract between the parties does not foreclose remedies in tort when the plaintiff alleges intentional conduct such as misrepresentation.

Further, Defendants' reliance on *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021), is misplaced.  There, the plaintiffs had alleged various causes of action, including negligence, for Zoom's failure to secure data and maintain online meeting privacy for users.  *Id*. at 1023-24.  In dismissing the negligence claim, the court held the economic loss rule barred the claim, and none of the exceptions to the rule applied.  *Id*. at 1038-40. However, the court also noted the intentional conduct exception did not apply because the plaintiffs had brought a *negligence* claim and did not allege *intentional* conduct.  *Id*. at 1040.  The facts alleged here differ.  Plaintiff asserts claims for intentional misrepresentation under various California statutes and violation of statutorily prescribed duties under the ARL.  This is not a negligence claim, and as such, *In re Zoom* is distinguishable.

Therefore, the Court DENIES the motion to dismiss as to the cause of action for conversion.

### C.     Count 6: Restitution

"The Ninth Circuit has recognized that while 'there is not a standalone cause of action for "unjust enrichment"' in California, the term 'describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.'" *Soo v. Lorex Corp.*, No. 20-cv-01437, 2020 WL 5408117, at *8 (N.D. Cal. Sept. 9, 2020) (citing *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  Through this method of

12

pleading, a "plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election referred to at common law as 'waiving the tort and suing in assumpsit')." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).

Plaintiffs seeking restitution for the same alleged conduct under California statutory claims typically cannot proceed under a quasi-contract theory, since they have not waived the tort to sue in assumpsit; rather, they have chosen to sue in tort. *See, e.g.*, *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918, 2021 WL 4306018, at *24 (N.D. Cal. Sept. 22, 2021); *Silver v. Stripe Inc.*, No. 4:20-cv-08196, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011). Plaintiff alleges his theory of restitution based on the *same* violations of the ARL that underlie his UCL claims. (Dkt. No. 42 ¶ 174.) Moreover, at oral argument, Plaintiff could not articulate any other theory of restitution that differed from the alleged conduct underlying the UCL claims. Therefore, the cause of action for restitution under a quasi-contract theory is duplicative of the claim for restitution under California statutory law and warrants dismissal.

So, the Court GRANTS the motion to dismiss the restitution claim.

### D.   Count 7: Money Had and Received

The claim of "money had and received" requires a plaintiff allege "the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013) (citation omitted). Three elements underlie the claim: "1) the defendant 'received money that was intended to be used for the benefit of' the plaintiff; 2) the money 'was not used for' the plaintiff's benefit; and 3) the defendant 'has not given the money to' the plaintiff." *Eng. & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016) (citing CACI No. 370). "Although such an action is one at law, it is governed by principles of equity." *Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586 (1949). Plaintiff has not adequately alleged a claim of money had and received.

Plaintiff does not allege Defendants failed to provide him with internet security services in exchange for the money paid via the auto-renewing subscription. To the contrary, Plaintiff alleges

1  he downloaded the Nord Security app and used it, (Dkt. No. 42 ¶¶ 95-96), and that he had access
2  to his account up until he ceased renewal of his subscription with assistance of counsel in 2024,
3  (*id.* ¶ 103).  These allegations are fatal to a claim for money had and received, which requires the
4  money received by Defendants was not used for Plaintiff's benefit.

Accordingly, the Court GRANTS the motion to dismiss the money had and received claim.

## CONCLUSION

For the reasons stated above, the Court:

- DENIES the motion to dismiss or stay the case pursuant to the first-to-file rule,
- GRANTS the motion to dismiss for lack of personal jurisdiction,
- DENIES Plaintiff's request for jurisdictional discovery, and
- GRANTS the motion to dismiss as to the "restitution" and "money had and received" claims, but otherwise DENIES the 12(b)(6) motion to dismiss.  The dismissal of the claims is without leave to amend as amendment would be futile.

The initial case management conference will be held at 1:30 p.m. on December 12, 2024, by videoconference.  The parties' joint statement should be filed by December 5, 2024.

This Order disposes of Docket No. 44.

**IT IS SO ORDERED.**

Dated: December 2, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge